# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MSA Products, Inc.

*Plaintiff,*

v.

Nifty Home Products, Inc., Frank
Tiemann, Fingerhut and Southern
Refreshment Services, Inc. d/b/a
COFFEEICON.COM

*Defendants.*

Civil Case No. 11-cv-5261(WJM)(MF)

**DOCUMENT FILED
ELECTRONICALLY**

Hon. William J. Martini, U.S.D.J.

Hon. Mark Falk, U.S.M.J.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)

---

**STERNS & WEINROTH, P.C.**
50 West State Street, Suite 1400
Trenton, New Jersey 08610

**NIKOLAI & MERSEREAU, P.A.**
900 Second Avenue South
Suite 820
Minneapolis, MN 55402

*Attorneys for Defendants Nifty Home
Products, Inc., Frank Tiemann, Fingerhut and
Southern Refreshment Services, Inc., d/b/a
CoffeeIcon.com*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1
STATEMENT OF FACTS ...........................................................................................3
   I.  FACTS RELATED TO JURISDICTION. ...........................................................3
  II.  FACTS RELATED TO NON-INFRINGEMENT OF THE PATENTS-IN-SUIT. ...........5
      A.  THE ACCUSED PRODUCTS. ..................................................................5
      B.  THE PATENTS-IN-SUIT. .......................................................................6
LEGAL ARGUMENT .................................................................................................8
   I.  THE COURT SHOULD DISMISS DEFENDANT FRANK TIEMANN FOR LACK OF PERSONAL JURISDICTION PURSUANT TO 12(b)(2). ...................................8
      A.  THE LEGAL FRAMEWORK FOR PERSONAL JURISDICTION. ...........................9
      B.  FRANK TIEMANN HAS NO CONTACTS, MUCH LESS "MINIMUM CONTACTS" WITH THE STATE OF NEW JERSEY. ...........................................11
      C.  THE FORUM CONTACTS OF DEFENDANT NIFTY HOME PRODUCTS, INC. SHOULD NOT BE IMPUTED TO MR. TIEMANN FOR PURPOSES OF SPECIFIC JURISDICTION. ............................................................................11
  II.  THE COURT SHOULD PARTIALLY DISMISS COUNTS I AND II OF THE COMPLAINT WITH RESPECT TO THE 6436 AND 6454 COFFEE POD DRAWERS. ...........................................................................................................15
      A.  THE LEGAL FRAMEWORK FOR DESIGN PATENT INFRINGEMENT. ...........16
      B.  DEFENDANTS DO NOT INFRINGE EITHER PATENT-IN-SUIT BY MAKING, USING OR SELLING THE NIFTY 6436 OR 6454 COFFEE POD DRAWERS. ....18
         1.  *Claim Construction of the Patents-In-Suit.* ...........................................18
         2.  *Significant differences between the 6436 and 6454 products and the patents-in-suit negate a finding of infringement as a matter of law.* .......................21
           (a.)  The 6436 and 6454 do not infringe the '444 Patent. ...................21
           (b.)  The 6436 and 6454 do not infringe the '445 Patent. ......................24
CONCLUSION ...........................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 443 (D.N.J. 1997) ...............................10

*Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) .......18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)..16

*Arlandson v. Hartz Mt. Corp.*, Civ. No. 10-1050, 2011 U.S. Dist. LEXIS 56462, *2 (D.N.J. May 11, 2011).....................................................................................................9

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).................8

*Bangura v. Pennrose Mgmt. Co.*, Civ. No. 09-4017, 2010 U.S. Dist. LEXIS 59450, 7-8 (D.N.J. June 15, 2010)..............................................................................................11

*Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L. Ed.2d 528 (1985)9, 10

*Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 & n.1 (3d Cir. 1992) ........................8, 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..............16

*Chassen v. Fidelity National Financial, Inc.*, Civil No. 09-291(PGS), 2009 U.S. Dist. LEXIS 107602, * 10 (D.N.J. Nov. 16, 2009) ....................................................................13

*Cotapaxi Custom Design & Mfg. LLC v. Corporate Edge, Inc.*, 2007 U.S. Dist. LEXIS 73172, *14-15(D.N.J. Sept. 28, 2007)...............................................................................18

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010)................................18

*Dobson v. Dornan*, 118 U.S. 10, 14, 6 S. Ct. 946, 30 L. Ed. 63, 1886 Dec. Comm'r Pat. 202 (1886)..................................................................................................................18

*Dollar Sav. Bank v. First Sec. Bank, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984) ...........................10

*Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001)...........................19

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) .............21

*Edison Elec. Appliance Co. v. Fitzgerald Mfg. Co.*, 32 F.2d 705, 706 (2d Cir. 1929).................17

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).................................17

*Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995)....................................16, 17

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ...........................................15

*Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1370 (Fed. Cir. 2010)....................................................8

*Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 858 (Fed. Cir. 2006).........................................21

*Goodman v. Goodman*, No. 04-03869, 2010 U.S. Dist. LEXIS 20518, at *18 (D.N.J. Mar. 5, 2010)...................................................................................................................11

*Gorham v. White,* 81 U.S. 511, 528, 20 L. Ed. 731 (1871) .........................................................17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9, 104 S. Ct. 1868, 80 L. Ed.2d 404 (1984)..............................................................................................9

*Hsin Ten Enter. United States v. Clark Enters.*, 149 F. Supp. 2d 60, 63 (S.D.N.Y. 2001)...........18

*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)...........10

*Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) ......................................................16

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)11

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993)......19

*Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1319 (Fed. Cir. 2006) .........................................21

*Knierim v. Siemens Corporation*, No. 06-4935, 2008 U.S. Dist. LEXIS 26571, at *22 (D.N.J. 2008)...................................................................................................................12

*Kulwicki v. Dawson*, 969 F.2d 1454, 1463, n. 11 (3rd Cir. 1991).................................................16

*Laskowitz v Marie Designer, Inc.*, 119 F. Supp 541, 544-45 (S.D. Cal. 1954)............................17

*Lawman Armor Corp. v. Master Lock Co.*, Civil No. 02-6605, 2004 U.S. Dist. LEXIS 3705, *18 (E.D. Pa. Mar. 11, 2004)................................................................................................18

*Lucas v. Gulf & Western Indus., Inc.*, 666 F.2d 800, 806 (3d Cir. 1981)................................13

*Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)...................................................15

*Lyon v. Barrett*, 89 N.J. 294, 300, 445 A.2d 1153 (1982)...................................................14

*Manville Sales Corp. v. Paramount Sys.*, 917 F.2d 544, 552 (Fed. Cir. 1990)....................13

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)...................17, 18

*Mars, Inc. v. Coin Acceptors, Inc.*, 514 F. Supp. 2d 624, 626-627 (D.N.J. 2007).................21

*Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)......................8

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330-31 (3d Cir. 2009).........................9

*N.J. Reg'l Council of Carpenters v. D.R. Horton, Inc.*, Civil No. 08-1731 (KSH), 2010 U.S. Dist. LEXIS 65189, *6 (D.N.J. June 30, 2010)...............................................................12

*Nicholas v. Saul Stone & Co. LLC*, No. 97-8601998 U.S. Dist. LEXIS 22977, at *10 (D.N.J. June 30, 1998)..............................................................................................................12

*Novartis Pharm. Corp. v. Eon Labs Mfg.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004)...................21

*Oorah, Inc. v. Schick*, No. 08-2202, 2009 U.S. Dist. LEXIS 5475 (D.N.J. Jan. 26, 2009)...........11

*Patterson by Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990)..............................8, 9, 13

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)........15

*Pfundstein v. Omnicom Group*, 285 N.J. Super. 245, 254, 666 A.2d 1013, 1017 (N.J. Super. Ct. App. Div. 1995)...............................................................................................................14

*Provident Nat't Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)............8

*Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir. 1982)..............................................................................................................................10

*SDS USA, Inc. v. Ken Specialties, Inc.*, 2002 U.S. Dist. LEXIS 16762 (D.N.J. Aug. 28, 2002)..13

*Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 337, 634 A.2d 74, 79 (N.J. 1993)......................12

*Seltzer v. I.C. Optics, Ltd*, 339 F. Supp.2d 601, 609 (D.N.J. 2004)...........................9, 12, 13, 14

*Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)...............................8

*State Dept. of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 500, 468 A.2d 150 (1983)..............................................................................................................................13

*Tropicana Prods. V. Land O' Lakes, Inc.*, 286 F.2d 343, 345 (D. Del. 2003).............................18

*Weber v. Jolly Hotels*, 977 F. Supp. 327, 330 (D.N.J. 1997)................................................9

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)..............................................................................................................................10

**Statutes**

35 U.S.C. § 271(a) ...............................................................................................................13

*N.J. Ct. R.* 4:4-4 ................................................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(2) .........................................................................................................8

Fed. R. Civ. P. 12(d) ...........................................................................................................15

Fed. R. Civ. P. 56(c) ...........................................................................................................16

Fed. R. Civ. P. 56(e) ...........................................................................................................16

Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006) .......................................18

## INTRODUCTION

Defendant Frank Tiemann submits this memorandum of law in his own right to dismiss the Complaint as to him for lack personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Defendants Nifty Home Products, Inc. ("Nifty"), Bluestem Brands, Inc. d/b/a Fingerhut ("Fingerhut"), and Southern Refreshment Services, Inc. d/b/a COFFEEICON.com ("SRS") (hereinafter collectively "Defendants") also move to partially dismiss Counts I and II of the Complaint with regard to sales of Nifty's 6436 and 6454 Coffee Pod Containers pursuant to Rule 12(b)(6), or, in the alternative, under Rule 56.

Nifty and Plaintiff MSA Products, Inc. ("MSA") are competitors.  Both make a number of kitchenware products.  For a short while, Nifty and MSA worked collaboratively on a number of projects, whereby Nifty would design new products and MSA would find manufacturers to produce the new products for Nifty.  Once Nifty and MSA's relationship ended, MSA began threatening to sue Nifty for patent infringement based on designs Nifty had created, but MSA patented without Nifty's knowledge, consent or participation.  Most of these patents relate to the storage and display of coffee pods.[1]

Companies like Keurig, Inc. ("Keurig"), Kraft Foods, Inc. and the Nestle Group sell coffee brewers that brew single cups of coffee with a variety of flavors.  For example, Keurig's K-CUP®[2] brewers are capable of quickly brewing a single cup of coffee, tea, hot chocolate or the like.  The brew material is supplied in prepared, single-serving units, which are called "coffee pods."  Keurig brands its coffee pods "K-CUPS"®.

---

[1] The prior relationship between Nifty and MSA is not relevant either to the motion to dismiss Mr. Tiemann for lack of personal jurisdiction, or the motion to partially dismiss Counts I and II of the Complaint  for non-infringement pursuant to Rule 12(b)(6).  Defendants believe it is important to give the Court some flavor of the prior relationship between the parties.  The support for this background can be found in the Tiemann Decl. at ¶¶ 12, 13.

[2] K-CUP® is a registered trademark of Keurig, Inc.

1

Nifty was one of the first companies to recognize the need to efficiently store and display K-CUPS® and other coffee pods in an aesthetically pleasing way. Consequently, Nifty has invented and patented a number of products for storing and displaying coffee pods such as K-CUPS®. MSA followed Nifty into this market and now competes with Nifty.

Plaintiff asserts in its Complaint that the Court has jurisdiction over Mr. Tiemann because Nifty is the alter ego of Mr. Tiemann. However, in New Jersey piercing the corporate veil is an extreme measure and courts will only impute the contacts of a corporation onto a shareholder in order to prevent fraud or the like. This is not that sort of case.

Mr. Tiemann has no personal contacts with the State of New Jersey. Mr. Tiemann does not do business in the state of New Jersey, does not own any property in New Jersey and has never travelled to New Jersey. His only relationship to this forum is through his company, Nifty. Nifty does do business in New Jersey. Despite what MSA would have the Court believe, Nifty is not the alter ego of Mr. Tiemann. As will be seen, Mr. Tiemann does not have voting or operational control of Nifty. Nifty is a duly organized corporation existing under the laws of the State of Minnesota. As a shareholder, founder, president and CEO of Nifty, Mr. Tiemann should be afforded the shield from liability that any other shareholder would be afforded under New Jersey law. MSA has not, and cannot, allege any facts which would support piercing the corporate veil to hold Mr. Tiemann accountable for the acts of Nifty. Accordingly, this Court should dismiss Mr. Tiemann from this case for lack of personal jurisdiction.

MSA accuses three Nifty products of infringing two of MSA's patents. MSA claims to own U.S. Patent D628,444 ("'444 Patent") and U.S. Patent D628,445 ("'445 Patent") (collectively "the patents-in-suit"). MSA alleges that Defendants infringe the patents-in-suit by selling Nifty's K-CUP® Drawers, including Nifty's "vertically stacked three drawer

arrangement." For purposes of this Motion, Defendants are seeking a determination that the "vertically stacked three drawer arrangements" do not infringe the patents-in-suit. Defendants do not concede that Nifty's single drawer arrangement infringes either of the patents-in-suit. However, the differences between Nifty's "vertically stacked three drawer arrangement" and the inventions claimed in the patents-in-suit are so striking and substantial, that the Court can, as a matter of law, determine that at least two of Nifty's products do not infringe the patents-in-suit even at this early stage. The Court can compare specimens of the accused products to the drawings in the patents-in-suit, and determine that they do not infringe.

## STATEMENT OF FACTS

### I.    FACTS RELATED TO JURISDICTION.

Mr. Tiemann is a resident of the State of Minnesota, and lives in Madison Lake, Minnesota. (Tiemann Decl., at ¶ 2). He does not own any real property or other property located in New Jersey. (Tiemann Decl., at ¶ 3). He does not own a home in New Jersey and currently has no intention to move to New Jersey. (Id.) Mr. Tiemann does not transact business in New Jersey on his own behalf. (Tiemann Decl., at ¶ 4). He does not hold a bank account in New Jersey. (Id.) While Mr. Tiemann has traveled to New York to meet with Mr. Martin Snider, the president of MSA Products, Inc., to the best of Mr. Tiemann's recollection he has never been to New Jersey. (Tiemann Decl., at ¶ 5). When Mr. Tiemann met with MSA at its offices located in New York, he was acting in his capacity as president and CEO of Nifty. (Id.)

Frank Tiemann founded Nifty Home Products, Inc. on January 15, 1991, more than twenty years ago. (Tiemann Decl., at ¶ 6). Nifty is organized and doing business under the laws of the State of Minnesota, with its principal place of business located in Madison Lake,

Minnesota. (Id.)  Mr. Tiemann is the president and CEO of Nifty.  (Id.)  Nifty does not own any real estate or other property in New Jersey. (Tiemann Decl., at ¶ 7).  Nifty's vice president and chief financial officer is Richard Vogelgesang.  (Tiemann Decl., at ¶ 8).  Mr. Tiemann and his wife own 50% of the stock in Nifty, while Mr. Vogelgesang and his wife own the other 50%. (Tiemann Decl., at ¶¶ 6, 8).  Both Mr. Tiemann and Mr. Vogelgesang share in the day-to-day management operations of Nifty.  (Tiemann Decl., at ¶ 8).  Neither Mr. Tiemann, nor Mr. Vogelgesang have voting or operational control of Nifty.  (Tiemann Decl., at ¶ 8).  Both Mr. Tiemann and Mr. Vogelgesang receive a salary from Nifty, along with Nifty's other 7 employees. (Tiemann Decl., at ¶ 9).

Nifty designs, manufactures and distributes a number of items that are useful in the kitchen.  These items include turkey lifters, baking racks, cooling racks, roasting racks, racks for storing fruit, pizza racks, pie racks, carousels for holding coffee pods, carousels for storing make-up, and drawers for holding coffee pods.  (Tiemann Decl., at ¶ 10).  Nifty marks its packaging not only with its name, but also its trademarks.  (Tiemann Decl., Exs. 7 and 8).  Nifty sells it products not only through Fingerhut and Southern Refreshment Services, but also through Bed Bath and Beyond, Williams-Sonoma, and The Home Market Place.  (Tiemann Decl., at ¶ 10).  Nifty's estimated annual sales were over $10 million last year.  (Id.)  Nifty is sufficiently capitalized to meet all of its financial obligations and has no long-term debt.

## II.    FACTS RELATED TO NON-INFRINGEMENT OF THE PATENTS-IN-SUIT.

### A. THE ACCUSED PRODUCTS.

Nifty manufactures and distributes a number of patented carousels for holding and displaying K-CUPS®, T-DISCS® and NESPRESSO®. (Tiemann Decl., at ¶ 11). Nifty began selling such carousels in 2007. (Id.) The Nifty carousels were an immediate commercial success, and accessories for such coffee pods became a major component of Nifty's business.

In early 2011, Nifty designed two new cabinets of drawers for holding K-CUPS®. (Tiemann Decl., at ¶ 13). The first of these new cabinets of drawers is the Nifty 6436 Coffee Pod Drawer ("6436"). The 6436 has three drawers, each drawer sized to fit three rows of four K-CUPS® each. (Tiemann Decl., Ex. 4). The second of these new cabinets of drawers is the Nifty 6454 Coffee Pod Drawer ("6454"). The 6454 also has three drawers, wherein each drawer is sized to fit three rows of six K-CUPS® each. (Tiemann Decl., Ex. 5). Both the 6436 and the 6454 look substantially the same.

On February 10, 2011 Nifty applied for its own design patent on the 6436 and 6454 products. (Tiemann Decl., Ex. 6). On August 30, 2011, the U.S. Patent and Trademark Office issued U.S. Patent D644,069 for a "Triple Tier Drawer for Holding Beverage Cartridges" (hereinafter the "'069 Patent"). (Id.) Reproduced below is a side-by-side comparison of the 6436 and 6454 products to Nifty's '069 Patent.



| FIG. 8 of the '069 Patent (Tiemann Decl., Ex. 6) | Nifty 6436 Coffee Pod Drawer (Tiemann Decl., Ex. 4 at p. 1) | Nifty 6454 Coffee Pod Drawer (Tiemann Decl., Ex. 5 at p. 1) |
|---|---|---|

**B.    THE PATENTS-IN-SUIT.**

MSA asserts that Nifty's 6436 and 6454 products infringe MSA's '444 Patent. (Complaint at ¶ 21). The '444 Patent was issued on December 7, 2010. (Nikolai Decl., Ex. A). The drawings of the '444 Patent show a single-tiered drawer with six rows.



**FIG. 2 from the '444 Patent**

MSA also asserts that Nifty's 6436 and 6454 products infringe MSA's '445 Patent. (Complaint at ¶ 29). The '445 Patent was also issued on December 7, 2010. (Nikolai Decl. Ex. B). The drawings of the '445 Patent are substantially the same as the drawings of the '444

6

Patent, with the exception that the side paneling for the cabinet lacks the mesh side panel present in the '444 Patent.



| FIG. 2 from the '445 Patent. |
| --- |

Nifty's '069 Patent on its face **references both the '444 and '445 Patents**. (Tiemann Decl., Ex. 6 at "Cited References"). Nifty submitted both references to the U.S. Patent and Trademark Office with its Information Disclosure Statement filed on May 6, 2011. Therefore, the patent examiner considered the design shown in the '069 Patent (i.e. the design of the 6436 and 6454 products) to be different enough from the designs of the '444 and '445 patents to make them patently distinct.

## LEGAL ARGUMENT

### I.   THE COURT SHOULD DISMISS DEFENDANT FRANK TIEMANN FOR LACK OF PERSONAL JURISDICTION PURSUANT TO 12(b)(2).

Federal Rule of Civil Procedure 12(b)(2) states that a defendant may move to dismiss a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).  In patent infringement cases, the Federal Circuit applies its own law regarding the issue of personal jurisdiction "because the jurisdictional issue is intimately involved with the substance of the patent laws." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). For all non-patent issues, regional circuit law applies. *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1370 (Fed. Cir. 2010).  Where the parties have not conducted discovery, the plaintiff need "only to make a prima facie showing" that the defendants were subject to personal jurisdiction. *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).  However, Rule 12(b)(2) does not limit the scope of the court's review to the face of the pleadings. *See Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 & n.1 (3d Cir. 1992). Consideration of affidavits submitted by the parties is appropriate and, typically, necessary. *Patterson by Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990).

Once a defendant has asserted a motion to dismiss under Rule 12(b)(2), the plaintiff carries the burden of "establishing with reasonable particularity sufficient contacts between the defendant and forum state." *Provident Nat't Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  At the preliminary stages of litigation plaintiffs must merely allege sufficient facts to establish a prima facie case of jurisdiction over the person. *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). However, once the defendant contradicts these allegations with an opposing affidavit, plaintiffs must present similar evidence in support

of personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330-31 (3d Cir. 2009); *Carteret Sav. Bank*, 954 F.2d at 142 & n.1, 146; *Patterson*, 893 F.2d at 603-04. "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personal jurisdiction. . . . Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 604.

## A.     THE LEGAL FRAMEWORK FOR PERSONAL JURISDICTION.

A district court may only exercise personal jurisdiction over a non-resident of the forum to the extent authorized by the forum state's long-arm statute. *Arlandson v. Hartz Mt. Corp.*, Civ. No. 10-1050, 2011 U.S. Dist. LEXIS 56462, *2 (D.N.J. May 11, 2011). New Jersey's long-arm statute allows courts to assert personal jurisdiction to the outermost extent permissible under the Fourteenth Amendment to the Constitution. *See N.J. Ct. R.* 4:4-4. *See also Weber v. Jolly Hotels*, 977 F. Supp. 327, 330 (D.N.J. 1997).

Personal jurisdiction exists when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L. Ed.2d 528 (1985). A court may exercise either "general" or "specific" jurisdiction over a defendant. *Seltzer v. I.C. Optics, Ltd*, 339 F. Supp.2d 601, 609 (D.N.J. 2004). A plaintiff may prove general jurisdiction by establishing that there are sufficient contacts for a court to assert "personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9, 104 S. Ct. 1868, 80 L. Ed.2d 404 (1984). A court obtains general jurisdiction over the defendant when the defendant "has maintained continuous and substantial forum affiliations." *Reliance*

*Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir. 1982) (citing

*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

Where a defendant lacks the "continuous and systematic" in-forum presence necessary to

confer general jurisdiction, he still be may be subject to specific jurisdiction, if the particular

cause of action at issue arose out of the defendant's contacts with the forum. *See Alexander v.

CIGNA Corp.*, 991 F. Supp. 427, 443 (D.N.J. 1997). Three elements are required for specific

jurisdiction. First, the defendant must have purposefully directed sufficient "minimum contacts"

with the forum such that it reasonably should have anticipated being haled into court there. *See

Burger King Corp.*, 417 U.S. at 475 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). Second, the plaintiff's claim must arise

out of defendant's contacts with the forum state. *See Dollar Sav. Bank v. First Sec. Bank, N.A.*,

746 F.2d 208, 211 (3d Cir. 1984). Third, the assertion of personal jurisdiction must not "offend

*International Shoe's* traditional notions of fair play and justice." *Id.* at 213. Factors to be

considered on this point include: (1) the burden on the defendant; (2) the forum State's interest in

adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the interstate judicial system's interest in obtaining the most efficient resolution of

controversies; and (5) the shared interest of several States in furthering fundamental substantive

social policies. *World-Wide Volkswagen*, 444 U.S. at 292.

**B.    FRANK TIEMANN HAS NO CONTACTS, MUCH LESS "MINIMUM CONTACTS", WITH THE STATE OF NEW JERSEY.**

Mr. Tiemann is a resident of the State of Minnesota, not New Jersey. He does not transact business in New Jersey on his own behalf, owns no property in New Jersey, and has no physical presence in New Jersey whatsoever. He has never travelled to New Jersey. In sum, Mr. Tiemann's contacts with New Jersey are non-existent. MSA has not alleged and is unable to point to any evidence of "continuous and systematic" contacts necessary to support the assertion by New Jersey courts of general jurisdiction over Mr. Tiemann. Accordingly, the Court should dismiss the Complaint against Mr. Tiemann for lack of personal jurisdiction.

**C.    THE FORUM CONTACTS OF DEFENDANT NIFTY HOME PRODUCTS, INC. SHOULD NOT BE IMPUTED TO MR. TIEMANN FOR PURPOSES OF SPECIFIC JURISDICTION.**

Personal jurisdiction does not exist over a corporate officer simply because the corporate entity itself may be amenable to personal jurisdiction in the forum state. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984). Rather, each defendant's contacts with the forum state must be evaluated individually. *Id.* n.13. *See also Oorah, Inc. v. Schick*, No. 08-2202, 2009 U.S. Dist. LEXIS 5475 (D.N.J. Jan. 26, 2009) ("To exercise jurisdiction over Schick, Plaintiff must make a prima facie showing that Schick has contacts with New Jersey, aside from his capacity as an officer . . ."); *Bangura v. Pennrose Mgmt. Co.*, Civ. No. 09-4017, 2010 U.S. Dist. LEXIS 59450, 7-8 (D.N.J. June 15, 2010) ("Both Holden and Jones supervised employees in New Jersey, and, as such, were required to have contact with New Jersey for the purposes of fulfilling their professional responsibilities. However, these contacts do not demonstrate purposeful availment on their part."); *Goodman v. Goodman*, No. 04-03869, 2010 U.S. Dist. LEXIS 20518, at *18 (D.N.J. Mar. 5, 2010)

("Unidentified 'family visits' and limited business conducted on behalf of an employer does not establish this Court's personal jurisdiction over these defendants."); *Knierim v. Siemens Corporation*, No. 06-4935, 2008 U.S. Dist. LEXIS 26571, at *22 (D.N.J. 2008) ("In their declarations, plaintiffs point exclusively to contacts between plaintiffs and [their employer] in New Jersey, regarding the formation and alleged breach of the employment contracts. However, those contacts are not sufficiently independent of [their employer] to establish specific jurisdiction.").  As a general rule, an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity. *Nicholas v. Saul Stone & Co. LLC*, No. 97-8601998 U.S. Dist. LEXIS 22977, at *10 (D.N.J. June 30, 1998), aff'd, 224 F.3d 179 (3d Cir. 2000).  Thus, as a starting point, the Court should decline jurisdiction over Mr. Tiemann because, at best, the contacts alleged in the Complaint are those of Nifty and not Mr. Tiemann.

MSA also alleges in a conclusory fashion and without any additional proof that jurisdiction is proper because Mr. Tiemann is the "alter ego" of Nifty. (See Complaint at ¶¶ 22 and 30).  Personal jurisdiction can also be asserted in a parent-subsidiary context under three separate theories:  (1) the "single entity" test, (2) the agency theory, or (3) the alter ego doctrine. *N.J. Reg'l Council of Carpenters v. D.R. Horton, Inc.*, Civil No. 08-1731 (KSH), 2010 U.S. Dist. LEXIS 65189, *6 (D.N.J. June 30, 2010). [3]

It is axiomatic that "a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the

---

[3] An agency relationship arises when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent. *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 337, 634 A.2d 74, 79 (N.J. 1993).  In the parent-subsidiary context, the parent may be subject to personal jurisdiction in the forum if the subsidiary is doing business in the forum that would otherwise have been done in the forum by the parent. *See Seltzer* 339 F. Supp.2d at 610. Here, Nifty was not empowered to act on Mr. Tiemann's behalf, but was acting on behalf of the corporation.  Because Mr. Tiemann does not have any voting or operational control over Nifty, it cannot be said that Nifty was the "agent" of Mr. Tiemann.

corporate enterprise." *State Dept. of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 500, 468 A.2d 150 (1983) (citation omitted). Therefore, it is a well established principle that the forum contacts of a "subsidiary corporation" shall not be imputed to a parent corporation for jurisdictional purposes without a showing of something more than ownership." *Seltzer* 339 F. Supp.2d at 609 (citing *Ventron*, 94 N.J. at 468). A court must consider "whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded." *Lucas v. Gulf & Western Indus., Inc.*, 666 F.2d 800, 806 (3d Cir. 1981). In order to evaluate this issue, the Court must consider whether MSA has pled any facts that warrant a finding that the relationship between Mr. Tiemann and Nifty could be classified as an "alter ego relationship." *Chassen v. Fidelity National Financial, Inc.*, Civil No. 09-291(PGS), 2009 U.S. Dist. LEXIS 107602, * 10 (D.N.J. Nov. 16, 2009). A court may disregard conclusory allegations in determining whether to exercise personal jurisdiction. *Patterson*, 893 F.2d at 604

In order for an individual shareholder to be held personally liable for direct patent infringement under 35 U.S.C. § 271(a), there must be evidence to justify piercing the corporate veil. *SDS USA, Inc. v. Ken Specialties, Inc.*, 2002 U.S. Dist. LEXIS 16762 (D.N.J. Aug. 28, 2002) (quoting *Manville Sales Corp. v. Paramount Sys.*, 917 F.2d 544, 552 (Fed. Cir. 1990)). While Mr. Tiemann is a shareholder and officer of Nifty, not a parent corporation, the analysis is substantially the same. In New Jersey, a subsidiary will be deemed to be the alter ego or "mere instrumentality" of its parent where the parent so dominates the subsidiary that it has no separate existence, but is merely a conduit for the parent. *See Seltzer* 339 F. Supp.2d at 610. Courts will consider factors such as: (1) the level of capitalization of the subsidiary; (2) who the subsidiary does business with other than the parent; (3) the day-to-day involvement of the parent's

directors, officers and personnel with the subsidiary; and (4) the payment of the subsidiary's salaries and expenses by the parent. *Id.* In the absence of extraordinary circumstances, such as fraud or injustice, a court will generally decline to find liability for the parent. *Id.; See also, Lyon v. Barrett*, 89 N.J. 294, 300, 445 A.2d 1153 (1982).

Frank Tiemann does not sell any products. Rather, Nifty sells a variety of kitchenware. Nifty sells these products through different distributors and through its website. Nifty's name appears on the packaging for each of its products and the packaging is marked with Nifty's trademarks. (Tiemann Decl., Exs. 7 and 8). Mr. Tiemann's name does not appear on any of the packaging. (Id.) Further, all bills are paid to Nifty. Nifty was incorporated for the very reason corporations exist – to insulate Mr. Tiemann and Nifty's other shareholders from the liabilities of Nifty itself.

Furthermore, Mr. Tiemann does not dominate Nifty in a manner sufficient to impute Nifty's contacts to Mr. Tiemann. Nifty's CEO and CFO share equally in the day-to-day operations of Nifty. Nifty's board of directors share in the personnel, marketing and managing decisions of Nifty. Mr. Tiemann draws a salary from Nifty, and shares in the profits of Nifty with Nifty's other 50% shareholder Richard Vogelgesang. Mr. Tiemann has his own separate bank account from Nifty, and files his own income tax returns. Likewise, Nifty has its own corporate bank accounts, and files its own tax returns. In all ways, Nifty operates as an independent company. It is, therefore, inappropriate for the court to impute Nifty's contacts to Mr. Tiemann, where he does not exercise "unusual hegemony" or "dominate and control" Nifty so as to disregard their independent corporate existence. *See Pfundstein v. Omnicom Group*, 285 N.J. Super. 245, 254, 666 A.2d 1013, 1017 (N.J. Super. Ct. App. Div. 1995).

There is no evidence that Nifty is a mere shell. It has operated for more than twenty years, is a profitable company, is able to meet all of its financial obligations and has no long-term debt. Accordingly, the Complaint against Mr. Tiemann should be dismissed for lack for personal jurisdiction.

**II.   THE COURT SHOULD PARTIALLY DISMISS COUNTS I AND II OF THE COMPLAINT WITH RESPECT TO THE 6436 AND 6454 COFFEE POD DRAWERS.**

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged — but has failed to show — that the pleader is entitled to relief. *Id.* Courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

When considering a Rule 12(b)(6) motion, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). A district court has discretion to convert a Rule 12(b)(6) or 12(c)

motion into a motion for summary judgment under Rule 56. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463, n. 11 (3rd Cir. 1991).

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

The party moving for summary judgment has the initial burden of proving an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A moving party may submit affirmative evidence that negates a material element of the non-moving party's claim. *Id.* at 325. If the movant brings such affirmative evidence, or makes a showing that the non-movant lacks evidence essential to its claim, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The burden of persuasion, however, rests ultimately on the non-moving party to establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Celotex*, 477 U.S. at 322. Absent a genuine issue for trial, summary judgment as a matter of law is proper.

## A.    THE LEGAL FRAMEWORK FOR DESIGN PATENT INFRINGEMENT.

Determining whether a product infringes upon a design patent requires a two-step analysis. First, the Court must construe the design patent properly, as a matter of law. *See Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (stating that "determining whether a design patent claim has been infringed requires, first, as with utility patents, that the claim be

properly construed to determine its meaning and scope") (citing *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996))). Second, the patented design must be compared to the alleged infringing product in order to determine whether or not it infringes the design patent. *See Elmer,* 67 F.3d at 1577. The ordinary observer test is the sole test for determining whether a design patent has been infringed. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) *(en banc).* The standard under the ordinary observer test was set forth over a century ago by the Supreme Court of the United States:

> If in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham v. White,* 81 U.S. 511, 528, 20 L. Ed. 731 (1871). The ordinary observer test requires that an average person, not an expert, compare the patent drawings to the allegedly infringing product, and "any significant differences in configuration and general appearance, as they present themselves to the average buyer of the article on inspection, will be sufficient to avoid infringement." *Laskowitz v Marie Designer, Inc.,* 119 F. Supp 541, 544-45 (S.D. Cal. 1954) (citing *Edison Elec. Appliance Co. v. Fitzgerald Mfg. Co.,* 32 F.2d 705, 706 (2d Cir. 1929)).

The Federal Circuit also refined the ordinary observer test to take into account how the ordinary observer would "view the differences between the patented design and the accused product in the context of the prior art." *See Egyptian Goddess,* 543 F.3d at 676. However, in some instances, consideration of the prior art will be unnecessary because the patented design and the accused product are "plainly dissimilar." *Id.* at 678. A court can, as a matter of law, conduct its own visual inspection and declare that a product does not infringe on a design patent. *Cotapaxi Custom Design & Mfg. LLC v. Corporate Edge, Inc.,* 2007 U.S. Dist. LEXIS 73172,

*14-15(D.N.J. Sept. 28, 2007); *see also Lawman Armor Corp. v. Master Lock Co.*, Civil No. 02-6605, 2004 U.S. Dist. LEXIS 3705, *18 (E.D. Pa. Mar. 11, 2004); *Tropicana Prods. v. Land O' Lakes, Inc.*, 286 F.2d 343, 345 (D. Del. 2003).  Defendants have submitted a specimen of the both the 6436 and 6454 products to the Court so that it can properly apply the "ordinary observer" test.  (Nikolai Decl., Exs. C and D).

**B.      DEFENDANTS DO NOT INFRINGE EITHER PATENT-IN-SUIT BY MAKING, USING OR SELLING THE NIFTY 6436 OR 6454 COFFEE POD DRAWERS.**

### *1.  Claim Construction of the Patents-In-Suit.*

Claim construction is a question of law for the Court. *Markman*, 52 F.3d at 979. "Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). "Design patents are limited to what is shown in the application drawings and are narrow in scope." *Hsin Ten Enter. United States v. Clark Enters.*, 149 F. Supp. 2d 60, 63 (S.D.N.Y. 2001). The Supreme Court has long held that a design is better represented by an illustration "than it could be by any description and a description would probably not be intelligible without the illustration." *Dobson v. Dornan*, 118 U.S. 10, 14, 6 S. Ct. 946, 30 L. Ed. 63, 1886 Dec. Comm'r Pat. 202 (1886). Accordingly, "[i]n many cases, the considerable effort in fashioning a detailed verbal description does not contribute enough to the infringement analysis to justify the endeavor." *Crocs, Inc.* 598 F.3d at 1302 (Fed Cir. 2010).  "As a rule, the illustration in the drawing views is its own best description." *Id.* at 1303 (quoting Manual of Patent Examining Procedure § 1503.01 (8th ed. 2006)); *see Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("It is the drawings in the patent, not just one feature of the claimed design, that define the patented design."). "[O]nly 'the non-functional aspects of an

ornamental design as shown in a patent are proper bases for design patent protection." *Door-*

*Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001) (quoting *KeyStone*

*Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993)).

      Figure 2 is a representative drawing of the '444 Patent.



**FIG. 2 from the '444 Patent**
**(Nikolai Decl., Ex. A)**

Figure 2 of the '444 Patent shows a <u>single</u> drawer adapted to slide in a cabinet.  The top of the

cabinet has an opaque top formed of a single, imperforate, <u>square</u> sheet.  The left and right sides

of the cabinet have a mesh panel extending from the top of the cabinet to the bottom portion.

The rear of the cabinet does not include a mesh backing.  The single drawer has a corresponding

<u>square</u> shape.  The drawer has mesh sidewalls on its left, right and rear sides.  However, the front

wall of the drawer lacks a mesh covering.  The drawer also includes five dividers creating six

rows for holding coffee pod containers such as K-CUPS®.  Each divider has a mesh wire panel

bordered by a bent wire rectangular frame.  The drawer further has a mesh wire bottom wall.

      Likewise, Figure 2 is a representative drawing of the '445 Patent.



FIG.2

**FIG. 2 from the '445 Patent.**
**(Nikolai Decl., Ex. B)**

The '445 Patent shows a cabinet with a <u>single</u> drawer adapted to slide in and out of a <u>square</u> cabinet. Here, the left and right sides of the cabinet do not have a mesh wire panel like that shown in the '444 Patent. The rear of the cabinet also lacks a mesh wire panel as in the '444 Patent. The drawer has a <u>square</u> shape which corresponds to the shape of the cabinet and is adapted to slide in and out of the cabinet. The drawer has mesh wire panels running along each of the left, right and rear sides of the drawer. The drawer again has five dividers creating six rows for holding coffee pods. The dividers do not include a mesh wire segment like those in the '444 Patent. The drawer has a mesh wire bottom.

> **2.     *Significant differences between the 6436 and 6454 products and the patents-in-suit negate a finding of infringement as a matter of law.***

First, it is important to note that the USPTO has granted Nifty its own patent on the accused products.  When examining the application that resulted in Nifty's '069 Patent, the USPTO considered the patents-in-suit and determined that the Nifty design was novel and non-obvious in light of the patents-in-suit.  Nifty's ownership of a patent covering the accused products is strong evidence that the designs are so different in the eyes of the ordinary observer, that the ordinary observer would not confuse the patented product for Nifty's accused products.[4]

> **(a.)   The 6436 and 6454 do not infringe the '444 Patent.**

Below is a side-by-side comparison of Figure 2 of the '444 Patent with a picture of the 6436 product.

---

[4] MSA alleges that Defendants are inducing infringement and/or contributing to infringement by selling their coffee pod holders.  (Complaint at ¶¶ 20-24 and 28-32).  However, if a plaintiff fails to establish direct infringement, then a plaintiff accordingly fails to establish either contributory infringement or inducement of infringement. *Mars, Inc. v. Coin Acceptors, Inc.,* 514 F. Supp. 2d 624, 626-627 (D.N.J. 2007).  *See also Kim v. ConAgra Foods, Inc.,* 465 F.3d 1312, 1319 (Fed. Cir. 2006); *Glenayre Elecs., Inc. v. Jackson,* 443 F.3d 851, 858 (Fed. Cir. 2006); *Novartis Pharm. Corp. v. Eon Labs Mfg.,* 363 F.3d 1306, 1308 (Fed. Cir. 2004) ("When indirect infringement is at issue, it is well settled that there can be no inducement or contributory infringement absent an underlying direct infringement."); *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement.").



| **FIG. 2 from the '444 Patent**<br>**(Nikolai Decl., Ex. A)** | **Nifty's Patented 6436**<br>**Coffee Pod Drawer**<br>**(Tiemann Decl., Ex. 4 at p. 1)** |

A side-by-side comparison of Figure 2 of the '444 Patent and the 6454 product is shown below.



| **FIG. 2 from the '444 Patent**<br>**(Nikolai Decl., Ex. A)** | **Nifty's Patented 6454**<br>**Coffee Pod Drawer**<br>**(Tiemann Decl., Ex. 5 at p. 1)** |

A number of substantial differences between the 6436 and 6454 drawers and the drawer claimed in the '444 Patent are immediately apparent.  First, and foremost, the '444 Patent shows only a single drawer, **where the 6436 and 6454 products each have three tiered drawers**.

Second, the single drawer and cabinet in the '444 Patent are substantially square with the length and width being substantially the same.  The three drawers and cabinets in the 6436 and 6454 products are rectangular.

22

Third, the drawer in the '444 Patent has five dividers and six rows.  The drawers in the 6436 and 6454 products only have two dividers and three rows.

Fourth, the drawer dividers of the '444 Patent have wire mesh panels.  The dividers of the 6436 and 6454 products do not have mesh wire panels.

Fifth, the front of the drawer in '444 Patent does not have a mesh wire panel.  The front of the drawers of the 6436 and 6454 products include mesh wire panels.

Sixth, the cabinet of the '444 Patent is about six times wider than it is tall.  The cabinet of the 6436 and 6454 products is taller than it is wide.

Seventh, in the '444 Patent the single drawer forms a single handle by providing a dip in the top bent wire border of the front of the drawer extending across the third and fourth rows of the drawer.  In contrast, the 6436 and 6454 products have three handles, one for each drawer. The handles are narrower and only extend across a single row.

Eighth, the rear of the cabinet in the '444 Patent is open and without obstruction.  The 6436 and 6454 products each have five bars extending across the back and between the opposed sides of the cabinet.  (This is best seen by comparing the rear view of the '444 Patent to the rear views of the 6436 and 6454 products as reproduced below.)[5]

---

[5] The horizontal bar shown in FIG. 5 of the '444 Patent is the top bar of the drawer and not a wire joining the left and right sides of the cabinet as in the accused products.  In the 6436 and 6454 products, there is a horizontal bar running on the cabinet, in addition to the top rear bar of the drawers.



| FIG. 5 from the '444 Patent (Nikolai Decl., Ex. A) | Rear View of Nifty's Patented 6436 Coffee Pod Drawer (Tiemann Decl., Ex. 4 at p. 6) | Rear View of Nifty's Patented 6454 Coffee Pod Drawer (Tiemann Decl., Ex. 5 at p. 7) |
|---|---|---|

An ordinary observer will immediately appreciate these differences particularly since the three stacked drawer arrangement of the Nifty products means as much or more cups can be held by a unit occupying less kitchen counter space which is at a premium in most kitchens.

(b.) <i>The 6436 and 6454 do not infringe the '445 Patent.</i>

Below is a side-by-side comparison of Figure 2 of the '445 Patent and the Nifty 6436 product.



| FIG. 2 from the '445 Patent (Nikolai Decl., Ex. B) | Nifty's Patented 6436 Coffee Pod Drawer (Tiemann Decl., Ex. 4 at p. 1) |
|---|---|

24

Shown below is a side-by-side comparison of Figure 2 of the '445 Patent and the Nifty 6454 product.



| FIG. 2 from the '445 Patent<br>(Nikolai Decl. Ex. B) | Nifty's Patented 6454<br>Coffee Pod Drawer<br>(Tiemann Decl., Ex. 5 at p. 1) |
| --- | --- |

Again, there are a number of substantial differences between the 6436 and 6454 drawers and the drawer claimed in the '445 Patent. First, and foremost, the '445 Patent shows only a single drawer. **The 6436 and 6454 products each have three drawers stacked vertically**.

Second, the drawer and cabinet in the '445 Patent are square with the length and width being substantially the same. The cabinet and drawers in the 6436 and 6454 products are rectangular. The length of each is almost twice as long as the width.

Third, the drawer in the '445 Patent has five dividers defining six rows. The drawers in the 6436 and 6454 products only have two dividers defining three rows.

Fourth, the side panels of the cabinet of the '445 Patent are open and unobstructed. The side panels of the 6436 and 6454 products have a mesh wire wall extending the height and depth of the side panels.

Fifth, the front of the single drawer in the '445 Patent is open and unobstructed by mesh. The front of the drawers of the 6436 and 6454 products include a mesh wire panel.

Sixth, the cabinet of the '445 Patent is much wider than it is tall, almost six times wider, in fact. The cabinets of the 6436 and 6454 products are taller than they are wide.

Seventh, in the '445 Patent the drawer forms a single handle by providing a dip in the top of the wire frame of the front of the drawer extending across the third and fourth row of the drawer. In contrast, the 6436 and 6454 products have three handles which are narrower and only extend the width of a single row.

Eighth, the rear of the cabinet in the '445 Patent is open and without obstruction. The 6436 and 6454 products each have five wire bars extending across the back between the opposed sides of the cabinet. (This is best seen by comparing the rear view of the '445 Patent to the rear views of the 6436 and 6454 products as reproduced below.)



| FIG. 5 from the '445 Patent | Rear View of Nifty's Patented 6436 Coffee Pod Drawer | Rear View of Nifty's Patented 6454 Coffee Pod Drawer |
|---|---|---|

Again, just like the U.S. Patent and Trademark Office has already done, an ordinary observer will appreciate the designs of the Nifty products are not the same as the designs shown and thus claimed in the '444 and '445 Patents. The differences are only magnified by the fact that the ordinary observer will immediately appreciate that the Nifty products can hold as much or more while requiring less counter space.

## CONCLUSION

The Court should grant Mr. Tiemann's motion to dismiss Frank Tiemann for lack of personal jurisdiction. Mr. Tiemann has no personal minimum contacts with the State of New Jersey. Furthermore, not only is there no evidence that Mr. Tiemann is the "alter ego" of Nifty, but the facts plainly contradict MSA's naked and unsupported assertion that Nifty is Mr. Tiemann's alter ego.

Second, as a matter of law, the Court should grant the Defendants' motion and find that neither of Nifty's triple tiered coffee pod drawers (e.g., the Nifty 6436 and 6454 products) infringe either of the two patents-in-suit. As a matter of law a rectangular three-tiered drawer construction looks so vastly different from the single tiered models depicted in the '444 and '445 Patents that an ordinary observer cannot be confused thinking he is purchasing the patented item. Granting Defendants' motion will streamline the case, and focus the issues. Therefore, the Court should grant Defendants' motion in its entirety.

Respectfully submitted,

**STERNS & WEINROTH, P.C.**
*ATTORNEYS FOR DEFENDANTS*
*NIFTY HOME PRODUCTS, INC., FRANK*
*TIEMANN, FINGERHUT AND*
*SOUTHERN REFRESHMENT SERVICES,*
*INC. d/b/a COFFEEICON.COM*

Dated:   October 21, 2011

/s/ Vincent J. Paluzzi
Vincent J. Paluzzi
vpaluzzi@sternslaw.com
   *and*
James T. Nikolai (*admitted Pro Hac Vice*)
Peter G. Nikolai (*admitted Pro Hac Vice*)
**NIKOLAI & MERSEREAU, P.A.**
900 Second Avenue South, Suite 820
Minneapolis, MN 55402
Phone: (612) 339-7461
Fax: (612) 349-6556